so go ahead please. I just want to move in your honors. I'll set a timer on my inside and track time. Whatever, whatever time you have on that clock, it's probably not gonna work. All right. Thank you. Your honor's may it please the court. My name is Neal. I saw and I'm here representing john Claude right petitioner in this matter. Your honors. Fundamentally, the question before this court is whether Mr Wright will have an opportunity to further develop his new evidence before a fact finder. Mr Wright has identified three independent reasons for this court to grant his petition into remand so that he might have that opportunity. First, the board abused its discretion in denying Mr Wright's motion for remand. It applied unlawfully stringent standards to his motion and failed to credit his new evidence is true. The if had the board applied the correct standards, it would have had no basis in law for denying his motion and this court should hold as much just as it did in glow and leah. Second, the immigration judge failed to ask Mr Wright to corroborate his credible testimony before denying his application for insufficient evidence. Uh, the in doing so, let me ask you that. Let me ask you a question. Um, if we conclude that the B. I. A. Abused its discretion in denying the motion to remand, do we need to reach your claim that you've just enunciated that the I. J. Required corroboration without providing notice. Your Honor. Yes, sir. I think the court does. But it depends on the specific holding that the court would reach. Um, in on the motion to remain argument. So specifically on the corroboration argument, the error there is that the I. J. Failed to adequately develop the record. So the only way to cure that error is to have this case go all the way back down to the I. J. For a plenary hearing. Now, if on the motion to remain argument, um, we are arguing that this court can hold as a matter of law that Mr Wright was entitled to remand, and that would reach the same result, and there would be no need to reach the Saravia or the Ziga argument on corroboration. However, you know, the motion. So in that sense, if this court reaches our ultimate argument on the motion to remain argument that, um, the Mr Wright was entitled to remain as a matter of law, then there would be no need to reach the, uh, the corroboration argument. Um, your discussion concerning, uh, the need for remand is predicated on the fact that there was quote new evidence. Correct? Yes, Your Honor. New evidence suggests evidence that did not exist at the time. Uh, the individual was before the B. I. A. Are not available for him to procure. I want to draw your attention to something that was said in in his brief to the B. I. A. Um, for the record, it's page two of his brief to the B. A. It's administrative record site 17, and it's in the context of his ineffective assistance to counsel claim, which is not an issue in front of us. But he says the following quote. His attorney failed to present available material testimonies of witnesses pertaining to the explanation of the attack on the respondents life. I'd break a quote for a minute, meaning the petitioners quote and an important letter from respondents father open print that explains in horrible acts that occurred to the family. Closed bread in looking at that statement, it suggests to a reader that the material in the respondents father's letter, meaning the petitioners letter was available to him at the time of his hearing before the I. J. And hence not new. Are you able to provide any context or a response to that statement and why that doesn't defeat your argument that it was new? Yes, Your Honor. So I think fundamentally that so we so the letter itself makes clear that it couldn't have been written before the close of the hearing. Specifically, if we look to this is a joint appendix page 54. Um, the father's letter quote, it says quote right after I received the news that my son was ordered deported by the immigration judge. I feared for his life. The letter then goes on to describe the father's attempts to reach out to the evidence itself that this evidence did not exist at the time of the hearing. And, you know, I think it's also so I it's also important to note that Mr Wright has been pro se and detained for his entire proceedings. And, um, as the as the record actually demonstrates to get access to a computer for less than 30 minutes per week in preparing his briefing to the court and to the B. I. A. So, you know, specific statement, though that statement is representing. I don't know where this council issue comes in because, as you say, it was pro se in front of the I. J. But it's suggesting there was a letter that existed that could have been presented. And so you're suggesting we should ignore that. Your honor, I'm suggesting the court should treat that as a misstatement as a incorrect characterization because the letter itself makes clear that the letter could not have existed prior to the hearing. Well, here's the problem with that particular point. So I want you to keep in mind what the judge has read to you right with a specific reference to the letter. There's another point in the the brief page 13 of the brief before the B. I. A. It's page 24 of the administrative record. Okay, now I'll read it slowly because you may not have this in front of you, right? But it relates to what the judge just read. Okay, and there are two instances I'm going to read from that which relate to this, right? The first is the evidence was available, but the ineffective, uh, the ineffectiveness of counsel made it nearly impossible for this to be revealed. And at the beginning of the very next paragraph, Mr Wright says the respondent would have provided the court with this vital information but could not have accomplished this because the attorney withheld and failed to present this evidence. Now there is no direct reference in the quotes that I've just made to what the judge read to you. But I'm a little puzzled because I don't know what it could be referring to if not this because that's the issue of the moment, right? You know, this information from Mr Moore. So help us understand the quote that the judge gave you as it relates to the two quotes that I gave you. Sure, Your Honor. So I'll begin by saying I'm bound by the information that's actually available in the record. Um, so there and admittedly, you know, admittedly, there's, uh, the record does not have what we do have in the record. Evidence is that the new evidence on its own face could not have existed prior to the hearing, as well as many statements throughout Mr Wright's testimony where he says, I had no contact with my father. I had no line of communication with my father, my father. Now we do have this most of the briefs that he filed to the board. And I think in light of the circumstances where we know about in the record, which is that he's detained, that he has access to a computer for less than 30 minutes a week. I think there is confusion in the in the description of events in the in the letter that could be attributed to miscommunication between him and his family on the outside and, you know, whoever was trying to help him find counsel. Um, and also just a miscommunication as to what evidence was in existence. But I think the dispositive point here is that the on the face of the new evidence, it's clear that it could not have existed prior to the hearing. And so, you know, putting aside Mr Wright's, uh, the using statements that are in Mr Wright's motion, uh, appeal to the board. Um, we do have clear evidence in the in the new evidence subject could not have existed prior to the hearing. Now, when you say it could not have existed, do you mean that's because there was a credibility finding which we can't review or why? I'm just curious as to what the source of your statement is. So the source of my statement is, um, at the end of the father's statement, the father says, quote, right after I received the news that my son was ordered deported by the immigration judge, I feared for his life and I reached out to officials. And then the letter goes on to describe what the father did. But sorry, no, no, please. And just to complete that point, um, in order for the father to be referencing immigration judges, final order of removal that had to have already happened. So, you know, the context of the letter makes clear that this is being written after the immigration judges entered his final order. And your honors, if I could move to the, uh, further into the motion to remand point. Um, we also have, uh, you know, I think if you compared to case law here, this, this issue comes into, into, into a striker relief. So specifically, there's a case called Huang H U A N G. This is case site 6 So that case was another case about new evidence. And specifically, the applicant had produced a certification from a family planning agency in China that the agency intended to enforce its, uh, one child policy against the applicant. There was no question in that case that the applicant could have gone to this agency at some prior time and gotten the certification. In fact, specifically in that case, it was simply a matter of having the applicant's relative asked the agency for the certification. And even in that case, this court held as a matter of law that this, uh, that this certification was previously unavailable. So if we compared that piece of evidence to what we have in the record here, we have multiple citations. We have multiple moments in which Mr explains his no line of communication with his father. He does not know where his father is, and even explains that he lost contact with his father specifically because his father verbally and physically abused him and kicked him out of the house as a teenager two decades before his hearing. I think it's quite clear that Mr Wright had far less access to his father or this kind of this kind of is there anything in the record that tells us how all of a sudden he got this letter that you're that's and I use that all of a sudden language in part because that's the position of the government, that it's inexplicable. How, given the circumstances you just described this, this letter comes to be, I'm going to assume I'll accept for the purposes of that question that it was a miscommunication that led to him representing it existed before the before the proceeding. So what in the record tells us how he was able to so there's nothing in the record that explicitly describes how this letter came into this possession. But again, we have a lot of different circumstantial references in the record that demonstrate why he couldn't obtain this letter prior to the hearing. And to be clear, the previous unavailability is a criteria for the motion to remand. But that's a distinct inquiry from the corroboration problem. So and we're coming to corroboration in a second. Go ahead. Stay focused if you could on this unavailability. What in the record tells us? Can we surmise that it was unavailable other than the contents of J. A. 54? So other than the contents of J. A. 54, if we look at J. A. 371 and 403, these are Mr. Wright's applications for asylum. The first one is filed on March 3rd, the second one on May 8th of 2019. So this stretch is, you know, encompasses the entire time of the proceedings. He's declaring that he does not know where his father is. That's on his asylum application. So we know that Mr. Wright did not know his father's whereabouts at any point during the proceeding. Then during his testimony to the IJ on May 24th, this is that joint appendix 147 lines 4 through 8, Mr. Wright specifically testifies that he's not even sure where his father, he's not sure where his father is, and he's not even sure if he's in the United States. So that further demonstrates that Mr. Wright had no knowledge as to where his father was at the time of this hearing. Now further, if we look at J. A. 442 and J. A. 396, these are Mr. Wright's affidavits and declaration, his own declaration in support of his application. In both of those statements, he describes the reason he no longer has communication with his father, specifically that his father was abusive towards him. He kicked him out of the house and severed ties with him back two decades prior to his hearing when he was a teenager. Okay, but yeah, you mentioned corroboration. There are a couple things I wanted to ask about. Did he exhaust that claim? And if so, where? Where in the record does it say he exhausted the corroboration, the failed corroboration? Yes, Your Honor. So if we looked at the Notice of Appeal that Mr. Wright filed to the Board of Immigration Appeals, this is that joint appendix 76, Mr. Wright does specifically say, quote, before the court, he says, you know, Mr. Wright argued effectively, quote, sufficient, that he presented sufficient documentary and testimonial evidence to adequately address the testimony of the respondent and to further probe. He also said, quote, the IJ, while recognizing the credibility of respondent, failed to note respondent's testimony in the context of how and why he was tortured, end quote. How does that show corroboration? That just shows that he doesn't believe the IJ evaluated the evidence he presented sufficiently. That doesn't raise the complaint of the IJ required me to have corroboration and I J found him credible. So I just don't see how that's an exhausted claim based on what you just read. So, Your Honor, if we look to this court's standard for for exhaustion, it's a liberal standard. And specifically, if you look to the case, Tacoma, which was recently decided by this court, Case Site 986 F3 at 272 through 73, it's clear that in order to satisfy exhaustion, an applicant simply needs to allege the facts that would support the claim that they're ultimately trying to make. And this is especially true for a pro se applicant. This court has multiple decisions, including the decision in Higgs, that make clear that the BIA and the court should put extra effort into understanding and considering what an applicant is trying to do in their pleadings. And I think you're reciting the obligation of the court completely accurately. My question for you is, though, in this circumstance, in looking at what the IJ did, and even what the petitioner said in his appeal to the BIA, the IJ took him as credible. The IJ did not say, I want more evidence of this. The Abdoulaye requirement for the corroboration gets triggered by certain conduct by the IJ, which I don't see anywhere in the record that the IJ required corroboration, rejected his claim for a lack of corroboration. So I'm not sure how we could find there was a failure by the IJ for not giving him a chance to corroborate here. So tell me why I'm mistaken. Sure, Your Honor. So on the merits of that argument, the reason we should understand this case as a corroboration case is that, I mean, I think we should start with Luziga. So in Luziga, that's Record Site 937, F3rd at 256, Luziga makes clear that there's only two ways for a credible applicant to fail on the issue. Either the applicant fails to meet their burden of proof, or the applicant fails to corroborate. And to be clear, this comes from a line of cases. So we also have a case called Chukwu, in which the IJ, similar to how the IJ here, said that there's no evidence on the issue, there's been no evidence presented. But then the court went into the record and found that there was actually evidence on that issue. And so the court said, well, clearly there was evidence. So this can't be a failure of burden of production. Instead, we must treat this as a corroboration case. And in that case, the applicant must fulfill its duty under OBDII. And so this is a very similar case. What happened here is, so this can't be a burden of production case, because as Luziga makes clear, the burden of production is a low threshold. The applicant need only demonstrate, or rather, present evidence as to one fact going to the element, and that satisfies the burden of production. If the IJ wants more than that one fact, it needs to ask for corroboration or give notice to the applicant that it desires that corroboration. So if we look to the evidence in the record, we can see on the issue of acquiescence, specifically, at Joint Appendix 297 through 298. This is the Immigration and Refugee Board of Canada's compilation from 2016. Mr. Wright submitted that document, and that document contained evidence that FACAR repeatedly commits crimes with impunity and is not controlled by the government. So specifically in that document, it describes quite a few things, but one in particular, that FACAR had been arrested in connection with the murder of a senator in Trinidad in 2015, and released immediately the next day. And that's just one of many. But that's But that's just a difference of opinion on how the evidence was weighed. That's not a lack of corroboration. And, and her, the IJ's, his opinion reads like a failure of proof, not a failure of corroboration, failed to carry a burden of proof. And so that's where my question goes. But I think maybe Judge Rebrano had a question. Your Honor, would you like me to respond to that point, or? You can respond to that point, then I'm going to ask you a different question. Go ahead. Sure. So just briefly, the, the IJ does not explicitly at any point in its opinion, reference any of the evidence that Mr. Wright presented. It does not, it does not make any mention of the IRBC compilation, of the State Department report, of the Jamestown Foundation report. And so this is, this could be understood as an error under MIRI, in the sense that the IJ simply ignored favorable evidence without any explanation. And that is an argument we make. Well, just talk real quick on MIRI. The, the judge followed the MIRI framework. He just concluded the evidence didn't satisfy it. So you're, you are, you take issue with how the judge looked at the evidence, not that he, you agree that that framework was followed. You just disagree with how the evidence was considered. Am I correct? No, Your Honor, we actually, we disagree that the IJ followed the explicit finding as to what would happen to Mr. Wright when he returned. Well, that's because he found that he wasn't tortured. And so there'd be nothing for the, for the government to acquiesce to. That's what the pair, the last paragraph of his opinion says. So respectfully, Your Honor, the IJ identifies three, basically the IJ identifies three reasons that Mr. Wright, that, that, three deficiencies in Mr. Wright's claim. The IJ specifically says there's no evidence that Mr. Wright will be identified, no evidence that Mr. Wright will be or that the government will acquiesce in Mr. Wright's torture. But it never affirmatively says this is what we believe will happen when the applicant reaches Trinidad. And the, the authority here. But he says there's no evidence that the authorities would acquiesce at the Joint Appendix 20. So I, I, I really do think I'm hearing an argument that you think that just the, maybe the IJ didn't consider the evidence in the fulsome way you would like. But I, I mean, the IJ made a finding. You may disagree with its factual basis. So, Your Honor, the, my reframe requires the IJ to make an affirmative finding as to what will happen, not simply negate the theories, only some of the theories that Mr. Wright has presented in his application. And I think we can see authority for that in Quinteros at Case Site 945 at 787. In that case, the IJ had simply refuted one of the theories that the applicant had presented for why they would be singled out or identified. And the court held that that's problematic. It's not enough simply to say, we don't think that you're going to be identified on the basis of your tattoo because the applicant had identified other means by which the, the immigration, or rather the authorities or the torturers in the country of removal in that case would identify him. Here, Mr. Wright presented multiple theories as to how he would be identified. He said that he has tattoos. He says that he has an American accent. He said that there's endemic corruption in the immigration authorities so that when he stands, his information will be transferred to, to BACAR and other organized criminals. And the immigration judge doesn't address any single particular theory in any detail. It simply says there's no evidence on acquiescence. So that's a failure to either make an affirmative prediction as to what will happen or specifically address each of the theories that the applicant has presented. And I think that failure makes judicial review impossible. And that's the exact problem that Myrie seeks to prevent. But it is true, Your The immigration judge seems to have completely ignored evidence and the board repeated that error. The board makes no specific reference to any of the country conditions evidence that Mr. Wright presented. It's only reference is to quote exhibit seven, which is the entire of the entirety of his country conditions reports. Would you agree, following up on something Judge Greenaway had asked you earlier that if, if we were to remand based upon a conclusion that the IJ was the wrong standard, we don't have to reach this issue because a new factual record might come to pass. That's correct. Okay, thanks so much. Thank you. We'll hear from you again on rebuttal. Thank you. Yeah. Mr. Kane, are you gonna make the magic happen? Yes. Mr. Conway is connected. Can you hear me, Mr Conway? Yeah. Good morning, Your Honor. I am on the line. May it please the court. I am appearing. I'll be. My name is Kevin Conway. I'm appearing on the path on behalf of the attorney general in this case. Very well, we can hear you and please proceed. Thank you, Your Honor. The petitioner in this, in this case is a convicted felon whose only available relief is deferral of removal and the board's decision to dismiss his appeal and deny his motion to remand is not erroneous. So let me ask you this. Let me ask you this question, Mr Conway, Mr Conway. Um, Mr. Moore's letter includes statements from two government officials corroborating his fears that if Mr Wright returns to Trinidad, his life would be in danger and he will be killed. Why is this not enough to establish a prima facie claim for deferral of removal under the undercat? Yeah. The the affidavit that is in question, you know, purportedly by Mr Wright's estranged father. Um, the board found that this evidence was not has not shown that this evidence was available. It cannot have been discovered or presented at the hearing. Well, put aside availability just for a moment. Substantively, we're going to talk about availability. I'm sure at length substantively. Why isn't that sufficient? Um, just as far as, um, objective evidence showing a reasonable likelihood, um, that he's entitled to relief. Uh, uh, good. I'm so sorry. If you're if you're responding, we can't hear you in the courtroom. Could you could you try again if you would, please? I'm sorry, Your Honor. Yeah. Let me ask it this way. I didn't see anything in your submission saying that the evidence wasn't material is the reason why we haven't heard a response to Judge Greenway's question. Is that you agree it's material and that your real complaint is it wasn't new? Yes, I believe the well, the reason that we hope that we were, um, uh, the evidence is anonymous and because of the anonymous and hearsay quality of the evidence presented by in the in the affidavit to, um, to the court, but also because, um, to your to your honor's point that this evidence was not necessarily unavailable at the time or was not new. I think Judge Greenway, though, read to you not non anonymous attributions of fact, and I frankly don't remember any argument in your brief that that criticized this evidence is being anonymous or hearsay. I believe that yes, I've been. I'm trying to show you where I'll point out where it was on. I'm trying to find this. Yeah. Just give us the pages. We all have the briefs right in front of us, right? I'm looking for. I'm sorry, Your Honor. Yeah. At least one of the officials is identified by name. Isn't that right? Yes, Your Honor. That's correct. The individual from the I believe it was a national security unit for the State Department. Well, if that's so, then let's get back to my original question. Although I do thank Judge Swartz for trying to focus us. But my original question is having to do with the letter and just dealing with the substance, right? If you deal with the substance of the letter, isn't it enough to establish a prime facial case for deferral of removal under cat? I believe that, you know, taking as true that perhaps it would be enough to show that the... Okay. Great. Now, I understand your point about availability. We'll get to that. But we are to take it as true in the first instance, yes? I believe that's under the case law that yes, the... Yes. That's a yes? So we can move along? Okay. So, okay. So let's get to availability. You'll forgive me if I don't have all of my dates right, but I believe the hearing was before the IJ was in May. And the letter was produced, I believe, in August or... August. Yes. So where do we turn for the previously available? Help us focus on that. Because the reference in the letter is, this happened to my son and I wrote the letter. Yes. And to your... In addition to your honest point, both yourself and to Judge Schwartz pointing out sections in the record where he... Especially in his appeal brief to the board, on page AR24, the petitioner pointed out to the board that in his argument section that this new evidence should be accepted pursuant to ACFR 1003.1 E34, and that the evidence was available, but the ineffectiveness of counsel made it nearly impossible for it to be revealed. That's another instance which shows that this letter, notwithstanding the fact that the father puts that in there, that this letter was, or affidavit, or some Well, AR20... I'm going to interrupt you and I do beg your pardon, but AR24 doesn't connect the dots between Mr. Moore's letter and the statements about evidence availability. Does it? Because I wasn't aware that those dots were connected. I'm not sure what you mean, Your Honor. What I mean specifically is the two references on A24, do they specifically align? Do they specifically refer to the Moore letter? Well, I guess by reference, because in that argument section of Mr. Wright's appeal brief, he only references the affidavit from his father and the letter from a friend, and then specifically says this evidence was available, and this new evidence should be accepted, and this evidence was available, but was impossible to be revealed due to ineffectiveness of counsel, which is a claim that he no longer is apparently making, the ineffectiveness of counsel claim. Yes. All right. Does that answer your question? Yes, it answers that question. Let me... Is there any evidence in the record on this question of availability? Is there any question with regard to the record of any contact between Mr. Moore and Mr. Wright prior to the time of the submission of the letter? No, but the board made a footnote reference to the fact that Mr. Wright claimed that he was estranged from his father, but the board made the point that this doesn't mean that the rest of his family was estranged from him and was not able to contact him, which begs the question that we put in our brief that where did this letter come from, and how did the father find out that the son was appearing before or in removal proceedings, and then just provided this letter given the fact that they were estranged based on emotional and physical abuse from earlier in their lives? What are we supposed to do with that assertion? It's speculation, and under our case law, do you raise the point because you think the case should be remanded so that there can be a hearing on that point? Otherwise, I'm not sure what we're supposed to do with that. Well, I'm not arguing for remand of this case, but of course, it's up to the court to decide whether a remand is necessary in order to clear up any factual issues and or legal issues that have arisen with regard to this and with regard to the standard of review on other issues. But my point to you is, if you're questioning the veracity, there's no way for us to resolve a question of veracity. So if your intent is to resolve a question of veracity, it would have to go back. That's my only point. So I presume that you either are or you aren't. I just would like a response, that's all. When you say veracity, veracity on the part of the father who wrote the affidavit or veracity on the part of Mr. Wright? Well, you're questioning how did this all come about. And you're, I presume, asking us to draw an inference with regard to the veracity of the statement. If you're not, you'll just tell me. I'm not questioning its veracity and we'll vote. So you're referring to the affidavit, the veracity of the affidavit? Yes. I guess we have no basis to conclude that it's not, you know, that it's not truthful, but there was not a finding of that by the board or the immigration judge, or not by the immigration, by the board. Mr. Conway, let me turn your attention to the legal standard applied by the board. And looking at the Telegia case in which both of my distinguished colleagues were on that, happened to have been on that panel, which instructs that the corrected standard is a reasonable likelihood that he would be entitled or he's entitled to relief. Didn't the board apply the incorrect standard and demanded a heavy burden, a much heavier responsibility on the part of the petitioner in this case? I, you know, with regard to Telegia, the board did not address Telegia in this case. The board instead relied on Matter of Quello to find out the father's statement contains, even if his father's statement contains new information, he had not met his heavy burden. But was that incorrect? I don't believe it's incorrect. We cited in our brief a number of cases in which this court relied on Matter of Quello to find that the individual had a heavy burden and must present evidence such that the VA is satisfied that if proceedings were reopened with the new evidence offered would likely change the result in the case. I don't know why the board did not cite to Telegia the time frame, time lag between the finding or the decision in Telegia and the board's decision was pretty brief. But I don't think it was necessarily incorrect for the board to rely on Matter of Quello in that instance, given what they... But Telegia wasn't the first to pronounce that standard. Guao, our case in Guao, which predates it by a great deal, cited it. And I note that in your brief, you cite no precedential cases for citing the standard and cite only non-precedential decisions. Don't you have an obligation to at least bring to our attention the proper standard our precedent has made clear? That was just what I was attempting to do. And Telegia had already been brought to the attention of the court by the petitioner. What I was trying to do was to show that the board wasn't necessarily incorrect in relying on Matter of Quello. Well, it seems to me you have to distinguish. You can't pick and choose what standard you're going to urge the court to adopt. Is this case distinguishable from Telegia? I think it's actually distinguishable because in Telegia, the petitioner in that case provided multiple letters and medical reports. His wife was attacked and the police notified did nothing. And also, the new evidence in that case, or the evidence in that case, was clearly new and unavailable since the attack on the individual's wife happened after the hearing. In this case, or contrast this to the affidavit, one affidavit submitted by Mr. Wright from his estranged father, which Mr. Wright had never been harmed in Trinidad and Tobago, either before he left many years ago or up to the present time. And the information in the affidavit, as we said, is speculative. Well, but my question, regardless of whether the evidence was new or material, is whether you agree that the standard to be applied is reasonable likelihood that he's entitled to relief. And whether or not the board applied it, if it was already the law at the time, are we obligated to follow the correct standard here? I would agree that in Telesia that's the standard that is applicable. Reasonable likelihood he's entitled to relief. And do you also agree that that is not the standard the BIA applied? Yes, it would appear in this case that the BIA, you know, relying on Matt Aquello instead, applied another standard. And as a result, did the BIA err by not applying the regional precedent that governs its proceedings? I guess I would agree that the board should be applying the law of the place where the claim is raised. Okay, so there it's the regional precedent, which is the Third Circuit precedent. So, if we were to conclude that the information was available, and the government did not dispute in its brief that it was material, and the BIA applied the wrong standard, would you agree that we'd have to grant the petition here and really the only issue we need to decide is availability? Yes, I think that I would I would have to agree with that assessment. And following up on an issue that Judge Greenaway raised, would we have to send this back to the fact finder, since we can't make fact finding, to evaluate whether it was available, considering the evidence we've all been chatting about with you and your adversary? Yes, I think because it's a factual issue that can't be decided by the court that, yes, it would need to be remanded. And I believe that we raised that in our brief that, should there be a dispute between the standard review that it should be remanded for further analysis. Thank you so much. Oh, can I ask one other question? It's really about the motion to dismiss. Counsel, don't go anywhere, Mr. Conway, we still need you. You had the government made a motion to dismiss before the merits briefing. It's still pending, but in reading your merits brief, you cite to Nasrallah. Is it fair to say the motion is either moot or been withdrawn? Um, I, well, it hasn't been withdrawn. I was not the, I didn't, I was not the one who wrote and filed the motion to dismiss. But I would think that at this point, well, it's probably moot. Okay. Because it, and that seems consistent with, because the motion was predicated on a lack of jurisdiction. But getting to your brief, you cite to Nasrallah, which suggested, at least to me, that there was a concession since we only had the CAC claim in front of us. Under Nasrallah, we have jurisdiction to review. So it sounds like, could the presider deem this as a motion that's been deemed as moot? Absolutely. Okay. Thank you. I'm sorry for not letting Mr. Conway sit down. But now you can. Well, thank you very much. Thank you. Very well. So thank you. Let's go back for rebuttal, please. Yes, your honors. So I'll begin with the previous availability point. Your honors, what we have here is an ambiguity in the record. And there is a lot of evidence in the record that demonstrates Mr. Wright could not have had this evidence earlier. What is the reference on page 24-2? 24-2. No, no, I'm not. What is the reference on page 24? What is that reference to, if it's not the letter from Mr. Moore? Your honor, you're referring to Mr. Wright's statement in his juror team briefing to the board that there are other pieces of evidence out there? Yes. It's the two excerpts that I read to you. The evidence was available, but ineffectiveness of counsel. That's what it says, ineffectiveness of counsel. And the sentence two below that, the respondent would have provided the court with this vital information. I know that you say the record is ambiguous, but I wondered, what is the ambiguity? What else could that be referring to now that we're all sort of hyper-focused on this? Your honor, I think it's simply a miscommunication between the applicant who's sitting in a detention center and his family who are on the outside trying to understand what's going on in this case and trying to help him defend himself. So I think that explains the miscommunication in the briefing. But again, the statement in the letter makes clear it could not have existed at the time of the hearing. And further, your honor, I think what's important is that this ambiguity partially exists because the IJ did not follow the requirements under OBDII. So even if this it would be unfair to hold against the applicant the fact that he wasn't given an opportunity to further explain whether he could produce this corroboration at this time of the hearing or could explain its absence. Had the IJ simply followed the requirements of OBDII, the IJ would have asked Mr. Wright, can you corroborate your comments about your father? Do you have any way of getting your father's evidence into the record? And Mr. Wright could have either said, he could have explained why it was unavailable or exactly what would happen. What would need to happen to make it available? We don't have that information because the IJ did not follow its duty under OBDII. And it would simply be perverse to hold that against the applicant, especially a pro se applicant who is dealing with extremely difficult circumstances and trying to defend himself in this plan. So you think we should take the record as it exists and simply conclude it was available, not remand for a fact finding concerning availability. I'd like to know what you want us to do. Correct, your honor. I think this court based on the record that exists, but this document was not previously available. And to be clear, there's an important- You're asking us to do that though, based upon us agreeing with you that those representations was a miscommunication. That'd be the only basis for us to reject that position would be your view that we should accept it's a miscommunication, which you don't have evidence for, you're simply surmising. Well, I think your honor, there's the evidence for it is that the text of the statement makes clear that it could not have existed prior to the hearing. So the only possible conclusion based on the text of the letter is that Mr. Wright was confused when he wrote in the brief that was previously available. So it's not just my representation that this is a miscommunication, it's also the facts in the record which demonstrate that this evidence could not have existed. Is that because we're supposed to look at the statement and presume it's veracity so that we ... So, okay. I understand your argument. Okay. Well, thank you. And once again, thank you to Ms. Levy and Ms. ... I hope I'm pronouncing it right. You've obviously both worked enormously hard because your charge has done well this morning. And thank you also to Mr. Conway for a spirited argument today and we'll take the matter under advice.